J-S44012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| F.J.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.S. | : | No. 1402 EDA 2025 |

Appeal from the Order Entered May 1, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2022-03379

BEFORE:  LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED MARCH 31, 2026**

F.J.S. (Father) appeals *pro se* from the order, entered in the Court of Common Pleas of Montgomery County, ordering him to pay S.S. (Mother) $840.00 in counsel fees due to Father's failure to comply with a court order directing the parties to submit disputed parenting issues to an appointed parenting coordinator and execute a stipulation to enroll the parties' daughter, T.S. (born 3/19), in the Upper Moreland School District for the 2025-2026 academic year.[1]  After careful review, we affirm.

Father and Mother were married on October 14, 2007.  The parties separated on or about March 2, 2021.  The parties have four minor children born of the marriage, A.S. (born 5/12), E.S. (born 3/14), J.S. (born 3/16), and T.S. (collectively, Children).  Children were homeschooled in the parties' Bryn Athyn home by Mother; educationally, they tested below-grade-level

---

[1] Mother has not filed an Appellee's brief.

compared to other children their chronological age. Children did not receive their childhood vaccinations.

On March 11, 2022, Father filed a divorce complaint alleging the parties' marriage "is irretrievably broken" and that, once 90 days elapses from the service of the complaint, Father "shall file an affidavit consenting to a divorce" and he "believes [Mother] will also voluntarily file such an affidavit." Complaint, 3/11/22, at 3-4. On April 22, 2022, Father filed for shared legal and physical custody of Children. On June 6, 2022, the court entered an order granting Mother and Father shared legal and physical custody, effective immediately. The order also directed the parties to participate in family therapy. On June 7, 2022, Mother filed an answer and counterclaim to the divorce complaint seeking spousal support/alimony pendente lite/alimony, equitable distribution of the parties' marital property, incorporation of any potential property settlement agreement, and attorneys' fees, costs, and expenses.

On June 24, 2022, Mother filed an emergency petition to find Father in contempt for failing to transfer physical custody of Children to her, in contravention of the court's June 2022 custody order. On the same day, Father filed a petition for special relief asking to have Children enrolled in the Upper Moreland School District, where he resided at the time, to have Children vaccinated, and to have Mother undergo a psychological evaluation. Father also filed an answer to Mother's petition, which included a counterclaim for contempt against Mother for failing to pick up Children for her scheduled

period of physical custody and general non-compliance with the court's custody order.

Following a hearing, the court ordered the parties' counsel to provide verification of Children's vaccine requirements, submit the name of a proposed family counselor to the trial judge within three days, and have Mother be psychologically evaluated at Father's expense. In a separate order, the court denied Mother's emergency petition as moot. On August 2, 2022, the court entered an order acknowledging that the parties had agreed on a family counselor, ordered family therapy to commence "FORTHWITH," and ordered that Mother's psychological evaluation, with the parties' chosen neuropsychologist, also be conducted "FORTHWITH." Order, 8/2/22, at 1-2 (emphasis in original).

On August 15, 2022, the trial court granted Father's petition for special relief, directing that: (1) A.S., E.S., and J.S. be enrolled at Upper Moreland School District for the upcoming 2022-2023 school year "FORTHWITH"; (2) Children's enrollment at Upper Moreland be contingent upon verification Children will receive necessary vaccinations; (3) Children "FORTHWITH" receive childhood and COVID vaccines from their pediatrician; (4) T.S. be enrolled in a formal pre-school program; and (5) Children be enrolled in bi-weekly therapy. Order, 8/15/22, at 1 (emphases in original). The order also specified that "[t]he parties shall address all non-emergent concerns and issues with [C]hildren's therapist going forward prior to filing a petition with the Court." *Id.* at 7.

In June 2023, Father petitioned the court for primary physical custody of Children and to have Children relocated from Montgomery County[2] to Delaware County. Father stated that he intended to move to Delaware County in August to live with his fiancée and that he "believes . . . that attending school in the Rose Tree School District [in Media] would be in [C]hildren's best interest."[3] Petition for Modification and Special Relief, 6/2/23, at 3. Mother objected to Father's relocation and modification of the parties' custody order. Prior to the court ruling on his petition, Father moved to Media and signed a three-year lease. Father's move resulted in Children having to make a long commute to their school in Upper Moreland to and from Father's new residence in Media.

On June 19, 2023, custody mediator Charice D. Chait, Esquire, issued a custody conciliation report making the following recommendations with regard to Father's special petition: (1) Father and Mother continue to share legal and physical custody, alternating holidays; (2) each parent is entitled to one week of vacation; and (3) Mother and Father shall enroll in family counseling. **See** Custody Conciliation Report, 6/19/23, at 4-5. Mediator Chait reported that Mother and Father "are not able to effectively co-parent now and need

_____

[2] Mother lived in Bryn Athyn and Father lived in Huntingdon Valley at the time.

[3] Father noted in his petition that Bryn Athyn Borough does not have a public school and, as a result, "a majority of the Borough's children attend private schools operated by the General Church of New Jerusalem." Petition for Modification and Special Relief, 6/2/23, at 2. Moreover, Father averred that Bryn Athyn Borough "does not have an arrangement with any local public[]school districts for the upcoming 2022-2023 academic year." **Id.** at 3.

therapeutic intervention to reset their co-parenting relationship and resolve issues concerning [C]hildren's education and medical decisions." *Id.* at 5.

On August 17, 2023, the court ordered that, under the circumstances, A.S., E.S., and J.S. shall continue to be enrolled in Upper Moreland School District, without prejudice to either party to petition for the selection of a new school district after the 2023-2024 academic year. *See* Order, 8/17/23, at 1. The court also directed the Borough of Bryn Athyn "to provide a public school option for [C]hildren **FORTHWITH**." *Id.* at 2 (emphasis in original).

Following several court proceedings, including a hearing held on October 5, 2023, the court entered an order:  denying Father's request to have Children relocate to Media and attend school in the Rose Tree School District; directing that Children remain enrolled in Upper Moreland School District; granting Mother primary physical custody of Children, effective October 23, 2023; granting Father custodial time with Children three out of four weekends (Friday overnight to Monday) each month; granting shared alternating weekends of physical custody during the summer months; and resuming, "**FORTHWITH**," bi-weekly family counseling for at least four months. *See* Order, 10/16/23, at 1-2 (emphasis in original).

On November 9, 2023, the trial court issued its findings of fact, pursuant to 23 Pa.C.S.A. §§ 5328 and 5337 of the Custody Act, addressing the required custody and relocation factors to support its final custody decision. *See id.* at § 5328(a)(1)-(16). On November 29, 2023, the court entered a clarification order providing, in part, that Children shall be enrolled in therapy, A.S's

- 5 -

private therapy shall be reinstated, and Father shall have custodial time with T.S. after pre-school on Wednesdays and on his scheduled Fridays. *See* Order, 11/29/23, at 1-2.

On January 17, 2024, Mother filed a contempt petition against Father alleging that he "willfully failed to abide by the [parties' custody] order" when he: left J.S. in her custody despite the fact that it was Father's custodial time; took the Children to Media on 12/23/23 without informing Mother; refused to pick T.S. up on 1/10/24 from Mother's residence in order to exercise his custodial time; and failed to pay his 65% of uncovered costs for therapy. On March 21, 2024, the court entered an order stating that the issues in Mother's contempt petition had been resolved.

On May 6, 2024, by order, the court appointed Parenting Coordinator Colleen M. Norcross "due to the repeated devotion of [c]ourt time to address parenting, not legal, issues in this overly litigious child custody matter." Order, 5/1/24, at 1; *see* Pa.R.C.P. 1915.11-1. Following a hearing, on September 27, 2024, the court entered an order noting that the parties had entered into an agreement to modify E.S.'s and J.S.'s therapy schedule from bi-weekly to monthly, remove "A.S. . . . from the therapy provision[, but that she] shall attend on an as needed basis[, and] shall pursue options and discussion w[ith] her school counselor." Order, 9/27/24, at "Exhibit A." The court's order also directed that the parties "commence the enrollment of [T.S.] into the PA Cyber School," explore other private child care options for T.S. through May 2025, and, "in the event of an impasse on the education plan for

[T.S.] for the current academic year, [the] parties may request relief . . . via a letter to [the trial judge]." ***Id.***

On January 16, 2025, the court entered an order directing the parties to enter into a signed stipulation to enroll now-school-aged T.S.[4] in the Upper Moreland School District with her siblings. When Father refused to sign the stipulation because he wanted to add in provisional language,[5] the court held a hearing on April 1, 2025. After the hearing, the court entered an order confirming the parties' agreement to enroll T.S. at Upper Moreland for the upcoming 2025-2026 academic year and also directing Father and Mother "to facilitate the submission of this [o]rder to the Borough of Bryn Athyn and [to] promptly execute any and all documents such that the necessary arrangements will be facilitated to ensure [T.S.'] public school enrollment." Order, 4/2/25. The trial judge also instructed each of the parties to submit the name of a therapist for T.S. within one week. In compliance with a court order, Mother filed an affidavit certifying that her counsel incurred a total of $2,130.00 in fees for time spent "related to the selection of a therapist for A.S., T.S.'s school issues[,] and Father's refusal to execute the [s]tipulation

_____

[4] T.S. became age-eligible to enroll in first grade for the 2025-2026 academic school year.

[5] Father testified that he refused to sign the stipulation "as is" because he wanted to add language that, in the event T.S. was not permitted to enroll in school at Upper Moreland, she could be enrolled in the Rose Tree School District in an effort to prevent her from being homeschooled by Mother for an additional year.

regarding enrollment." Certification of Counsel Fees, 4/21/25, at 1. Father filed an objection to Mother's request for counsel fees.

On May 1, 2025, the court issued an order requiring Father pay $840.00 to reimburse Mother for counsel fees. The order includes the following, relevant provisions:

> Father has continued to fail to submit disputed parenting issues to the Parenting Coordinator, instead seeking to bypass the P[arenting] C[oordinator] with the filing of [p]etitions that are then scheduled for [c]ourt proceedings.
>
> Father's failure to observe the established procedure for parenting coordination results in the unnecessary use of [c]ourt time and forces Mother to incur unnecessary counsel fees.
>
> In addition to failing to comply with the [o]rder[s] for [p]arenting [c]oordination, Father failed to comply with [s]ection 8 of the January 16, 2025 [o]rder to facilitate T[.S.]'s enrollment via a signed [s]tipulation.

Order, 5/1/25.[6] Father filed a motion for reconsideration of the order, which the court denied. Father filed a timely notice of appeal and court-ordered

_____

[6] The order also included the following provisions:

> 2. Parenting coordination is a process developed by Rule, and adopted by the Supreme Court of Pennsylvania, to resolve parenting issues in child custody cases with repeated or intractable conflict between parents.
>
> 3. The goal of a parenting coordination program is to resolve time[-]sensitive parenting issues expeditiously, minimize the consumption of unnecessary judicial resources on the resolution of parenting issues and to encourage parents to resolve non-legal issues in a non-litigious manner.
>
> 4. The undersigned's June 25, 2024 [o]rder and January 16, 2025 [o]rder reinforced that disputed parenting issues shall first be addressed by the Parenting Coordinator who shall make a

*(Footnote Continued Next Page)*

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He

presents the following issues for our consideration:

> (1) Did the trial court err and abuse its discretion in awarding counsel fees where Father sought judicial enforcement of an existing therapy order, a matter beyond the authority of the Parenting Coordinator?
>
> (2) Did the trial court err and abuse its discretion in awarding counsel fees based on a certification that identified "a

_____

> recommendation with respect to the same in accordance with the local rules.
>
> 5. Section 5. of the January 16th Order specifically provides as follows:
>
>> *Going forward, the parties are directed to address parenting issues within family counseling and, in the event of an impasse,* **with the Parenting Coordinator***.*
>>
>> \*\*\*
>
> 9. The Affidavit/Certification of Counsel Fees, submitted by Mother's Counsel post hearing as "Exhibit M-5," is admitted into the record of the proceeding.
>
> 10. Upon review of the aforementioned Affidavit/Certification, Father is directed to pay Mother's Counsel the sum of Eight Hundred Forty ($840.00) Dollars towards the reimbursement of Mother's counsel fees within 30 days.
>
> 11. Subsequent to the Court proceeding on April 1", Father filed a pleading styled as an Objection to Mother's Motion for Attorneys['] Fees.
>
> 12. Father's Motion is **DENIED.** The Court expects compliance with the Court [o]rders going forward.
>
> \*\*\*
>
> 14. Court Administration is directed to remove this matter from active inventory.

Order, 5/1/25, at 1-3 (footnotes omitted; emphasis in original and added).

therapist for A.S.," [] despite the September 27, 2024 order removing A[.S.] from the therapy provision [] and the transcript showing the dispute concerned E[.S.]?

(3) Did the trial court err and abuse its discretion in sanctioning Father for failing to sign a stipulation where the January 16, 2025 order required only that the parties address enrollment via stipulation [] and the April 1, 2025 transcript shows Father engaged in that process[]?

Father's Brief, at 6-7 (citations to record omitted).

Father contends that the trial court erred when it ordered him to pay counsel fees to enforce a matter that was beyond the authority of the Parenting Coordinator. He is entitled to no relief.

Enforcement of custody orders though the contempt process is provided for in Pennsylvania Rule of Civil Procedure 1915.12. "A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment." **Sinaiko v. Sinaiko**, 664 A.2d 1005, 1009 (Pa. Super. 1995).

> When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. **Hyle v. Hyle**, [] 868 A.2d 601 (Pa. Super. 2005)[.] The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. **Id.** To be in contempt, a party must have violated a court [o]rder, and the complaining party must satisfy that burden by a preponderance of the evidence. **Id.**

**Harcar v. Harcar**, 982 A.2d 1230, 1234 (Pa. Super. 2009), citing **Hopkins v. Byes**, 954 A.2d 654, 655-56 (Pa. Super. 2008).

Section 5323 of Pennsylvania's Domestic Relations Code governs punishment for contempt in custody actions as follows:

**(g) Contempt for noncompliance with any custody order.**

- 10 -

**(1)** A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

> **(i)** Imprisonment for a period of not more than six months.

> **(ii)** A fine of not more than $500.

> **(iii)** Probation for a period of not more than six months.

> **(iv)** An order for nonrenewal, suspension, or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

> **(v) Counsel fees and costs**.

23 Pa.C.S.A. § 5323(g)(1) (emphasis added). Under section 5323, counsel fees are a proper sanction for contempt for noncompliance with a custody order. ***See id.*** at § 5323(g)(1)(v); ***see also Rhoades v. Pryce***, 874 A.2d 148, 152 (Pa. Super. 2005) (imposition of counsel fees constitutes contempt sanction).

> Attorney fees may be assessed as a sanction for [a] contemnor's refusal to comply with a court [o]rder, causing the innocent party to incur fees in an effort to obtain what was rightfully his. ***See*** 42 Pa.C.S.A. § 2503 [(Right of participants to receive counsel fees)]; ***Rhoades***[, ***supra***]; ***see also Goodman v. Goodman***, [] 556 A.2d 1379 [(Pa. Super. 1989).]

***Harcar***, 982 A.2d at 1234.

Moreover, under the Custody Act, a court may award reasonable counsel fees, costs, and expenses to a party "if the court finds that the conduct of another party was obdurate, vexatious, repetitive[,] or in bad faith." 23 Pa.C.S.A. § 5339.

The role of a parenting coordinator is defined, by rule, as someone who "attempt[s] to resolve issues arising out of the custody order by facilitating an agreement between the parties[] and[,] if unable to reach an agreement,

recommend[s] a resolution to the court." Pa.R.C.P. 1915.11-1(a)(2).

Pennsylvania Rule of Civil Procedure 1915.11-1 sets forth the court's ability to

appoint a parenting coordinator in a custody matter as follows:

> **(b)** Parenting Coordinator Appointment.
>
> **(1)** Appointment. After a final custody order has been entered, a judge may appoint a parenting coordinator to resolve parenting issues in cases involving repeated or intractable conflict between the parties that affects the implementation of the final custody order.
>
> **(i)** A parenting coordinator should not be appointed in every case.
>
> **(ii)** The appointment may be made on a party's petition or the court's motion.

Pa.R.C.P. 1915.11-1(b)(1). Subsection (e) of Rule 1915.11-1 defines the

parenting coordinator's scope of authority and issues he or she may resolve

between the parties:

> **(e)** Scope of Authority of the Parenting Coordinator. If the parties are unable to reach an agreement, the parenting coordinator shall have the authority to recommend resolutions to the court on issues related to the custody order.
>
> **(1) Issues Included.** To implement the custody order and resolve related parenting issues about which the parties cannot agree, the parenting coordinator is authorized to recommend resolutions to the court about issues that include, but are not limited to:
>
> **(i)** places and conditions for custodial transitions between households;
>
> **(ii)** temporary variation from the custodial schedule for a special event or particular circumstance;
>
> **(iii)** school issues, apart from school selection;
>
> **(iv)** the child's participation in recreation, enrichment, and extracurricular activities, including travel;
>
> **(v)** child-care arrangements;

**(vi)** clothing, equipment, toys, and the child's personal possessions;

**(vii)** information exchanges ( e.g., school, health, social) between the parties and communication with or about the child;

**(viii) coordination of existing or court-ordered services for the child (e.g., psychological testing, alcohol or drug monitoring/testing, psychotherapy, anger management);**

**(ix)** the child's behavioral management; and

**(x) other related custody issues that the parties mutually have agreed in writing to submit to the parenting coordinator, which are not excluded in subdivision (e)(2).**

*Id.* at (e)(1) (emphasis added).[7]

_____

[7] Rule 1915.11-1 also sets forth those issues that a parenting coordinator may not address or rule upon:

**(2) Excluded Issues**. The following issues are excluded from the parenting coordinator's scope of authority:

**(i)** a change in legal custody as set forth in the custody order;

**(ii)** a change in primary physical custody as set forth in the custody order;

**(iii)** except as set forth in subdivision (e)(1)(ii), a change in the court-ordered custody schedule that reduces or expands the child's time with a party;

**(iv)** a change in the child's residence (relocation);

**(v)** determination of financial issues, other than allocation of the parenting coordinator's fees as set forth in subdivision (h)(1);

**(vi)** major decisions affecting the child's health, education, or religion; and

**(vii)** other issues limited by the appointing judge.

*Id.* at (e)(2).

In the instant case, the parenting coordinator did nothing more than attempt to resolve issues between the parties that had been ordered by the court—specifically, setting up therapy for Children and facilitating the parties' execution of a stipulation to enroll T.S. in school for the upcoming school year. As the trial court cogently notes:

> In the overall, the record will demonstrate that the [c]ourt has devoted significant judicial time to parents['] concern[s] in this custody matter and has exercised extraordinary patience in addressing numerous non-legal issues on a nearly bi-monthly basis. Just since March 2024, there have been [c]ourt proceedings in this matter on the following dates: March 21, 2024, April 29, 2024, June 25, 2024, September 27, 2024, November 12, 2024, January 15, 2025, [and] April, 1, 2025[.]

Trial Court Opinion, 8/22/25, at 13-14.

Based on a comprehensive review of the record, we do not find that the trial court abused its discretion in appointing a parenting coordinator in the instant matter where the parties clearly were unable to follow court orders and persistently filed petitions that overwhelmed the court on day-to-day matters. *See Yates v. Yates*, 963 A.2d 535, 539 (Pa. Super. 2008) (court reasonably exercised its discretion in appointing parenting coordinator in custody matter where parents' relationship was "highly destructive, inflammatory[,] and hostile").[8] Additionally, the matters the coordinator was tasked to resolve were ancillary custody disputes, not core issues reserved solely for judicial decision-making in custody matters. *Id.* Thus, we find no merit to this issue.

_____

[8] *Yates* was superseded by statute as it relates to the custody factors enumerated in 23 Pa.C.S.A. § 5328(a) of the Custody Act.

In his second issue, Father contends that trial court abused its discretion in awarding counsel fees based on a certification that identified "a therapist for A.S., [] despite the September 27, 2024 order removing A[.S.] from the therapy provision [] and the transcript showing the dispute concerned E[.S.]." Father's Brief, at 6-7.

While Mother's counsel's affidavit certifying his legal fees does include time he spent selecting a therapist for A.S., it also lists fees incurred for time he worked on school enrollment issues for T.S., as well as his efforts to have Father execute the parties' stipulation to enroll T.S. in Upper Moreland School District. The record is clear that Father failed to comply with court orders requiring the parties to immediately enroll T.S. in school and also did not execute the stipulation "**FORTHWITH**," as the court ordered. **See** Order, 1/16/25, at 4 (emphasis in original). Here, the court awarded Mother less than 40% of the total fees she sought, which reasonably represents those fees not incurred in identifying a therapist for A.S, but those that account for expenses related to T.S.'s school enrollment and finalizing the stipulation. Therefore, we do not find that the court abused its discretion in ordering Father reimburse Mother for counsel fees in the amount of $840.00. **See** 23 Pa.C.S.A. § 5323(g)(1)(v); **see also id.** at § 5339 (court justifying counsel fees for Father's "vexatious, repetitive[,] and bad faith conduct").

In his final issue, Father contends that the court abused its discretion by sanctioning him for failing to sign the stipulation to enroll T.S. in the Upper Moreland School District for the upcoming school year "**FORTHWITH**." Order,

1/16/25. Specifically, Father argues that he "engaged in the process" to work out the stipulation in good faith, but wanted to add additional language to the agreement. We find that Father has waived this issue.

At the April 1, 2025 hearing addressing the parties' competing contempt/sanctions petitions and Father's special relief petition, Father agreed to the entry of an amended order, in place of a stipulation, confirming the parties' agreement that T.S. would attend Upper Moreland School District for the upcoming 2025/2026 academic year. His failure to object to the court's order memorializing the parties' agreement results in waiver. *See* N.T. Hearing, 4/1/25, at 28-30; *see also* Pa.R.A.P. 302(a). However, even if Father had not waived this issue, we would find he is not entitled to relief where his failure to agree to the stipulation to enroll T.S. in Upper Moreland School District was viewed by the court as an "attempt[] to negotiate and manipulate . . . to achieve his long-stated goal of having [C]hildren relocate to Media and attend his school district." Trial Court Opinion, 8/22/25, at 17. Such surreptitious behavior undoubtedly justifies the trial court's decision to award counsel fees.[9] *See* 23 Pa.C.S.A. §5339.

Order affirmed.

---

[9] Notwithstanding Father's underhanded actions throughout the life of this case, it is also impossible to ignore his selfish motives and inability to put the "best interest" of the Children first. By moving to Media to live with his fiancée before waiting for the court's ruling on relocation, he was well aware that, if the court denied relocation, it would result in a significant inconvenience for Children's travel to school.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/31/2026</u>